UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

Eleggua Osun Elufe,

                     Plaintiff,

    -against-

Lieutenant John Aylward;
Lieutenant Bernando Colon;
Sergeant Ayanna Harrison;
Detective Jason Palamara;
Police Officer Richard Reilly;
Police Officer Simley;
Sergeant Thomas Brogan;
Police Officer McCauley; and
Unknown Police Officers, 84th
Precinct Brooklyn,

                  Defendants.

----------------------------------X

NOT FOR PRINT OR
ELECTRONIC PUBLICATION

**MEMORANDUM AND ORDER**
09-CV-458 (KAM) (LB)

**MATSUMOTO, United States District Judge:**

       On January 29, 2009, Eleggua Osun Elufe ("plaintiff") commenced this *pro se* action against defendants Lieutenant Aylward, Lieutenant Colon, Sergeant Brogan, Sergeant Harrison, Detective Palamara, Police Officer Reilly, Police Officer Simley, and Police Officer McCauley ("defendants"), alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 and state law claims of assault and battery.  Defendants now move for summary judgment pursuant to Fed. R. Civ. P. 56.  For the reasons set forth below, defendants' motion is granted.

# BACKGROUND

## I.   Procedural History

On January 29, 2009, plaintiff commenced this *pro se* action pursuant to 42 U.S.C. § 1983 against Police Officer Reilly and unnamed police officers, alleging claims of false arrest, malicious prosecution, excessive force, and denial of medical attention under the Fourth and Eighth Amendments to the United States Constitution, and assault and battery under New York state law.  Plaintiff filed an amended complaint on August 17, 2009, adding as defendants Lieutenant Aylward, Lieutenant Colon, Sergeant Brogan, Sergeant Harrison, Detective Palamara, Police Officer Simley, and Police Officer McCauley.  Discovery followed.

Defendants filed the pending motion on August 13, 2010.  Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56 on the grounds that: (1) plaintiff's false arrest and malicious prosecution claims are barred pursuant to the United States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) the amount of force used was *de minimis* and reasonable and insufficient to sustain a claim for excessive force under § 1983; (3) the undisputed record establishes that plaintiff did not sustain an objectively serious or urgent injury, and neither sought nor was denied medical attention; (4) plaintiff fails to allege

2

that defendants were personally involved in the alleged

excessive force used against him and the undisputed record

establishes that defendants were not personally involved; (5)

plaintiff fails to state a claim for supervisory liability;

(6) defendants are entitled to qualified immunity; and (7) to

the extent that plaintiff alleges state law claims, they

should be dismissed because plaintiff failed to comply with

the New York General Municipal Law § 50-e pre-requisite to

file a notice of claim.  As required by the Local Civil Rules

of this district, defendants served and filed a Rule 56.1

statement of undisputed facts ("R. 56.1 Stmt.") a Rule 56.2

notice to a pro se litigant.  Plaintiff opposes defendants'

motion for summary judgment.

## II.  Undisputed Material Facts[1]

The undisputed material facts, as set forth in the

current record and the defendants' Rule 56.1 statement and

exhibits referenced therein, are as follows.  On August 28,

---

[1] As set forth in Local Civil Rule 56.1(c), "[e]ach numbered
paragraph in the statement of material facts set forth in the statement
required to be served by the moving party will be deemed admitted for
purposes of the motion unless specifically controverted by a
correspondingly numbered paragraph in the statement required to be served
by the opposing party."  L. Civ. R. 56.1(c).  In addition, Local Civil Rule
56.2 requires that notice be sent to *pro se* parties by the party moving for
summary judgment.  Here, defendants served both Rule 56.1 and 56.2
statements on plaintiff.  Plaintiff did not submit a correspondingly
numbered counter-statement controverting defendants' moving papers.  Thus,
although the assertions in defendants' Rule 56.1 statement are deemed
admitted for the purposes of this motion, the court has liberally construed
plaintiff's opposition papers and has determined that he has failed to
raise a disputed issue of material fact.

2008, plaintiff was involved in a knife fight with another individual, Mr. Williams, in Brooklyn, New York. (R. 56.1 Stmt. ¶ 1.)  New York City police officers arrived at the scene and arrested plaintiff. (R. 56.1 Stmt. ¶ 3.) Subsequent to plaintiff's arrest, the officers took photographs of plaintiff's face and body, which showed no visible injuries to plaintiff. (R. 56.1 Stmt. ¶ 4.) Plaintiff was examined by a medical professional prior to his arraignment on August 28, 2008 (R. 56.1 Stmt. ¶ 5), and two days later when he was admitted to Rikers Island (R. 56.1 Stmt. ¶ 6), during which examinations physical injuries were neither reported by plaintiff nor noted by the examining medical provider.  Two months later, on October 30, 2008, plaintiff was again examined by a medical professional and again denied any health problems or complaints. (R. 56.1 Stmt. ¶ 8.)  On December 26, 2008, four months after his arrest, plaintiff was given another health screening and, for the first time, complained of shoulder pain. (R. 56.1 Stmt. ¶ 9.)  Plaintiff offered alternate theories for the cause of his shoulder injury that did not relate to his arrest four months earlier: that it was caused by an "accident on the street" and that his shoulder "snapped." (R. 56.1 Stmt. ¶ 10.)  The New York State Department of Correctional Services diagnosed plaintiff with a possible joint disease, but found

4

no fractures or dislocations in plaintiff's shoulder. (R. 56.1 Stmt. ¶ 11.) Plaintiff received physical therapy for several months, which ended in May 2009. (R. 56.1 Stmt. ¶ 12.) The record does not indicate that plaintiff has received any other treatment for his shoulder injury since that time. (*Id.*)

Plaintiff pled guilty to Robbery in the Third Degree and Criminal Possession of a Weapon in the Third Degree on September 4, 2008. (R. 56.1 Stmt. ¶ 13.) Plaintiff is currently incarcerated at Sing Sing Correctional Facility. (R. 56.1 Stmt. ¶ 15.)

## DISCUSSION

### I.   Summary Judgment Standard

A court may grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In deciding a motion for summary judgment, the court's function is not to resolve disputed issues of fact, but only to determine whether there is a genuine issue

to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court must construe the facts in the light most favorable to the nonmoving party and all reasonable inferences and ambiguities must be resolved against the moving party. *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 83 (2d Cir. 2001).

Nevertheless, the nonmoving party cannot rely "merely on allegations or denials" but must instead "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Nat'l Westminster Bank USA v. Ross*, 676 F. Supp. 48, 51 (S.D.N.Y. 1987) ("Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact."); *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) ("[M]ere speculation and conjecture is [sic] insufficient to preclude the granting of the motion.").

Nor can the nonmoving party rest only on the pleadings. *Celotex*, 477 U.S. at 324 (Rule 56(e) "requires the nonmoving party to go beyond the pleadings"); *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). Instead, each statement of material fact by the movant or opponent must be followed by citation to evidence which would be admissible, as required by Fed. R. Civ. P. 56(e) and Local Civil Rule 56.1(d). Moreover, "the mere existence of some alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

## II.  Application

### a. Malicious Prosecution Claim

Defendants first argue that plaintiff's malicious prosecution claim is barred as a matter of law under *Heck v. Humphrey*, 512 U.S. 477 (1994), because his conviction has not been invalidated by an administrative board, state court, or in a federal habeas corpus proceeding. (ECF No. 67, Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Defs. Mem."), at 4-6.) Plaintiff does not address this procedural argument in his opposition; rather, he argues on the merits that the malicious prosecution claim "does not require a plaintiff to prove that the defendant was motivated by spite or hatred, but that he initiated the criminal proceeding due to a wrong or improper motive." (ECF

No. 68, Plaintiff's Motion for Opposition of Defendants'
Motion for Summary Judgment, ("Pl. Mem."), at 6.)  The court
finds that plaintiff's claim for malicious prosecution is
barred by the doctrine set forth in *Heck v. Humphrey*.

In *Heck v. Humphrey*, the Supreme Court held that "a
§ 1983 cause of action for damages attributable to an
unconstitutional conviction or sentence does not accrue until
the conviction or sentence has been invalidated."  512 U.S. at
489-90.  Thus, a plaintiff who seeks to "recover damages for
allegedly unconstitutional conviction or imprisonment, or for
other harm caused by actions whose unlawfulness would render a
conviction or sentence invalid . . . must prove that the
conviction or sentence has been reversed on direct appeal,
expunged by executive order, declared invalid by a state
tribunal authorized to make such determination, or called into
question by a federal court's issuance of a writ of habeas
corpus."  *Id.* at 486-87.  Accordingly, "the district court
must consider whether a judgment in favor of the plaintiff
would necessarily imply the invalidity of his conviction or
sentence; if it would, the complaint must be dismissed unless
the plaintiff can demonstrate that the conviction or sentence
has already been invalidated."  *Id*. at 487.

The Second Circuit has consistently held that claims
for malicious prosecution are barred by *Heck v. Humphrey* if

the conviction or sentence has not been invalidated. *See,
e.g., Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 F. App'x
672, 674 (2d Cir. 2009) (affirming dismissal of plaintiff's
claims for malicious prosecution because plaintiff "concede[d]
that his felony convictions have never been 'invalidated' by a
court or other proper authority"); *Murphy v. Lynn,* 118 F.3d
938, 947 (2d Cir. 1997) (holding that in order to establish a
claim for malicious prosecution under § 1983, a plaintiff must
show that the prosecution ended in his favor).  Here,
plaintiff pled guilty to Robbery in the Third Degree and
Criminal Possession of a Weapon in the Third Degree.  (R. 56.1
Stmt. ¶ 13.)  Plaintiff has not alleged nor presented any
evidence that his conviction has been invalidated.
Accordingly, summary judgment is granted as to plaintiff's
claim for malicious prosecution pursuant to *Heck v. Humphrey*.

### b. False Arrest Claim

Defendants similarly move for summary judgment on
plaintiff's false arrest claim on the ground that it, too, is
barred by *Heck v. Humphrey.*  (ECF No. 67, Defs. Mem., at 4-6.)
The court agrees.  In addition to *Heck v. Humphrey,* the court
grants summary judgment as to plaintiff's false arrest claim
on the ground that there was probable cause for plaintiff's
arrest, based on the undisputed record.

To analyze a § 1983 false arrest claim, the court looks to the law of the state in which the arrest occurred. *See, e.g., Davis v. Rodriguez,* 364 F.3d 424, 433 (2d Cir. 2004) (gathering cases). In New York, "a plaintiff claiming false arrest must show, *inter alia,* that the defendant intentionally confined him without his consent and without justification." *Covington v. City of New York,* 171 F.3d 117, 122 (2d Cir. 1999) (quoting *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996)).

However, the Second Circuit has held that "[t]he existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." *Weyant*, 101 F.3d at 852 (internal quotation marks and citation omitted); *see also Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). "The requirement of probable cause does not create a high bar for law enforcement." *Sforza v. City of New York*, No. 07-CV-6122, 2009 U.S. Dist. LEXIS 27358, at *40 (S.D.N.Y. Mar. 31, 2009). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or

is committing a crime." *Weyant*, 101 F.3d at 852 (citations omitted). Significantly, the "validity of an arrest does not depend upon an ultimate finding of guilt or innocence." *Peterson v. County of Nassau*, 995 F. Supp. 305, 313 (E.D.N.Y. 1998) (citing *Pierson v. Ray*, 386 U.S. 547, 555, (1967)). "Rather, the court looks only to the information that the arresting officer had at the time of the arrest." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). The question of whether or not probable cause existed may be determinable as a matter of law where there is no dispute as to the pertinent events and the knowledge of the officers. *See Weyant*, 101 F.3d at 852 (citation omitted).

Where the police arrest a suspect based on eyewitness identification, there is probable cause for the arrest. *See, e.g., Wahhab v. City of New York*, 386 F. Supp. 2d 277, 287 (S.D.N.Y. 2005) (finding that the police had probable cause to arrest a suspect in response to a 911 call from an eyewitness); *Russell v. Eighty Fourth Precinct*, No. 03-CV-6179, 2004 U.S. Dist. LEXIS 22546, at *7-9 (E.D.N.Y. Nov. 8, 2004) (finding that police had probable cause to arrest a suspect based on eyewitness identification). Here, it is undisputed that plaintiff was involved in a knife fight prior to his arrest. (R. 56.1 Stmt. ¶ 1; ECF No. 66, Ex. B, Excerpts from Deposition of Plaintiff ("Pl. Dep."), at 123-

24.)  Plaintiff testified at his deposition that there were eyewitnesses at the scene of the knife fight involving plaintiff and that someone called 911.  (Pl. Dep. at 123) ("A school guard was there, a black man, chubby.  I think he's the one that called the police.  Somebody called 911.")  Thus, because the undisputed evidence in the record suggests that the officers were relying on the identification of a suspect by an eyewitness, the police officers had probable cause to arrest plaintiff.  Having established that the officers had probable cause for the arrest, plaintiff's claim for false arrest must be dismissed.

Accordingly, the court grants defendants' motion for summary judgment on plaintiff's false arrest claim because, as a matter of law, it is barred by *Heck v. Humphrey* and because there was probable cause to arrest plaintiff.

### c. Excessive Force Claims

In support of their summary judgment motion on plaintiff's excessive force claim, defendants argue that "even if plaintiff could prove that the police pushed his face against the storefront window on August 28, 2008, the push was a *de minimis* use of force."  (ECF No. 67, Defs. Mem., at 8.) Defendants further argue that pushing plaintiff's face was "reasonable under the circumstances."  (*Id.*)  In the alternative, defendants argue that plaintiff's excessive force

claim must be dismissed against each defendant for their lack of personal involvement in plaintiff's arrest and because they are entitled to qualified immunity. (*Id.* at 12-17.) In response, plaintiff argues that "under Eighth Amendment claims, plaintiff herein did not have to show that the injuries was [sic] serious, only that it was more than minor and the other circumstances of the assault were unjustifiable." (ECF No. 68, Pl. Mem., at 5.) Plaintiff further argues, but offers no evidence, that each of the defendants was involved in the alleged use of excessive force, and that defendants are not entitled to qualified immunity because reasonable officers would disagree over the constitutionality of the force used during his arrest. (*Id.* at 6, 7.) The court considers the record in the light most favorable to plaintiff and, as set forth below, grants summary judgment to the defendants on plaintiff's excessive force claims.

### i. Reasonableness of Amount of Force Used

Plaintiff's complaint alleges that in the course of his arrest, a police officer pushed him against a glass window and he "received lacerations to head, a cut on my nose and injury to my right shoulder and arm." (ECF No. 1, Compl., at 4.) Although mere allegations are insufficient to defeat summary judgment, *Nat'l Westminster Bank USA*, 676 F. Supp. at

51, plaintiff testified at his deposition that he sustained an indentation on his nose from his glasses, a bruise lasting a few days on his forehead and a shoulder injury. (Pl. Dep. at 134-36.) Defendants do not dispute that plaintiff was pushed into a window, but assert that the single "push was a *de minimis* use of force" and "the force used by the police was reasonable." (ECF No. 67, Defs. Mem., at 8.) As set forth below, the court agrees that, based on the undisputed record, the force used by the police was not objectively unreasonable.

Claims for excessive force used by police officers "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard," *Graham v. Connor*, 490 U.S. 386, 395 (1989), not under the Eighth Amendment, as plaintiff suggests. "To succeed on a Fourth Amendment excessive force claim, a plaintiff must show that the amount of force used was 'objectively unreasonable.'" *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (citation omitted). Moreover, not "every push or shove" violates the Fourth Amendment. *Graham*, 490 U.S. at 396. Whether the force used in connection with the arrest is reasonable depends on a careful weighing of the facts of each particular case, including whether the suspect poses a threat,

resists, or attempts to evade arrest, and the severity of the crime at issue. *Id.*

Here, it is undisputed that police responded to a 911 call immediately prior to plaintiff's arrest, and that plaintiff was armed and had been identified as an individual involved in a knife fight in which he cut a man's neck. (R. 56.1 Stmt. ¶ 1; Pl. Dep. at 123-124.) Plaintiff states that after he was placed in handcuffs, he was pushed once by a "Hispanic" police officer into a storefront window, (Pl. Dep. at 132), after he started kicking his feet at some papers, prompting the police to ask, "What are you doing? Trying to get away"? (Pl. Dep. at 146.)

The Second Circuit has held that force similar to what plaintiff describes in his deposition does not establish excessive force. *See, e.g., Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 129 (2d Cir. 2009) ("One punch causing no injury to a suspect who is resisting being put in handcuffs does not rise to the level of excessive force."); *see also Massaro v. Jones*, 323 F. App'x 68, 70 (2d Cir. 2009) (finding that it was not excessive force for officers to kick defendant over a 15-20 second period during his arrest). On the other hand, courts in the Second Circuit have denied summary judgment on a finding that an issue of material fact exists as to whether excessive force was used in cases

involving repeated or more serious force than a push. *See, e.g., Castellar v. Caporale*, No. CV-04-3402, 2010 U.S. Dist. LEXIS 91191, at *26-27 (E.D.N.Y. Sept. 1, 2010) (denying summary judgment on excessive force claim where there were repeated acts of force after defendant was handcuffed); *Musso v. City of New York*, No. 05-CV-2511, 2008 U.S. Dist. LEXIS 60211, at *4 (E.D.N.Y. July 24, 2008) (plaintiff was punched in the chest, then punched 5-10 times, drop kicked, then kicked with both feet prior to being placed in handcuffs); *Sash v. United States*, 674 F. Supp. 2d 531, 539 (S.D.N.Y. 2009) (officers tackled, then threw the plaintiff against a metal gate after he agreed to voluntarily surrender and before he was placed in handcuffs); *Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999) (officers fired shots at a defendant in course of his arrest even though defendant might not have been armed and officers may have had an opportunity to warn defendant).

Here, although plaintiff was handcuffed, he admits that he was "kick[ing]" his feet as the officer tried to arrest him, (*see* Pl. Dep. at 146), and that the alleged force consisted of a single shove in which plaintiff's head and shoulder came into contact with a window (*see id.* at 137) (referring to "the push"). Under these circumstances, in which plaintiff admits that he was identified as having cut a

man's neck with a six-inch knife (*id.* at 120, 123), that he ran from the scene in possession of the knife (*id.* at 124), and that he was kicking his legs to the point that a law enforcement officer asked if plaintiff was trying to escape (*id.* at 146), the court finds that no reasonable jury would conclude that the force used was excessive and rises to the level of a constitutional violation. *See, e.g., Garcia v. Greco*, No. 05 Civ. 9587, 2010 U.S. Dist. LEXIS 11106, at *19 (S.D.N.Y. Feb. 9, 2010) ("Considering the danger Plaintiff posed to Defendant, and the very limited nature of Plaintiff's injuries, the Court concludes that no reasonable jury could find that Defendant's use of force rose to the level of a constitutional violation."). Accordingly, defendants' motion for summary judgment is granted with respect to plaintiff's claims for excessive force.

### ii. Defendants' Personal Involvement in Use of Excessive Force

Defendants argue, in the alternative, that even if the court finds that the force used was excessive, plaintiff's excessive force claim must be dismissed because the defendants were not personally involved in the alleged constitutional violation. (ECF No. 67, Defs. Mem., at 12-14.) In response, plaintiff argues, without evidentiary support, that "defendants participated directly in the alleged

constitutional violations . . . by committing perjury, by
signing [documents], fabricating criminal charges, fabricating
witnesses, events, that never transpired . . . ." (ECF No.
68, Pl. Mem., at 7.) Plaintiff further argues that
"Defendants have all failed to remedy wrongs which occurred on
28 August, 2008 . . . [and] were directly involved and or knew
of the wrongdoings, misconduct and violations towards herein
plaintiff." (*Id.* at 9.) As set forth below, the court finds
that even if the alleged use of force had been excessive,
plaintiff has failed to present evidence that any of the
defendants were personally involved in the alleged
constitutional violation.

It is well-established in the Second Circuit that
"personal involvement of defendants in alleged constitutional
deprivations is a prerequisite to an award of damages under
§ 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).
Thus, "[a] supervisory official cannot be liable solely on
account of the acts or omissions of his or her subordinates."
*McNair v. Kirby Forensic Psychiatric Ctr.,* No. 09 Civ. 6660,
2010 U.S. Dist. LEXIS 118156, at *22 (S.D.N.Y. Nov. 5, 2010).
Prior to 2009, the Second Circuit had held that a supervisory
official was personally involved when that official: (1)
participated directly in the alleged constitutional violation;
(2) failed to remedy the violation after being informed of the

18

violation through a report or appeal; (3) created or allowed the continuation of a policy or custom under which unconstitutional practices occurred; (4) acted with gross negligence in supervising subordinates who committed the wrongful acts; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). However, in 2009, the Supreme Court held in *Ashcroft v. Iqbal* that "[b]ecause vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's *own individual actions*, has violated the Constitution." 129 S. Ct. 1937, 1948 (2009). The Supreme Court explicitly rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." *Id.* at 1949. Thus, "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*

Here, plaintiff does not present evidence to raise a genuine factual dispute that Lieutenant Aylward, Lieutenant Colon, Sergeant Brogan, Detective Palamara and Police Officer Simley were not present at the time of his arrest and did not

personally use excessive force in effecting the arrest. (*See generally* ECF No. 68, Pl. Mem.) Rather, plaintiff testified only that a "Hispanic" officer pushed him into the window, and that Officer Reilly and one other officer, possibly Officer McCauley, were on the scene. (Pl. Dep. at 144-46.) Plaintiff presents conclusory allegations that defendants "participated in" the use of force, (ECF No. 37, Amend. Compl., at 3), and were "aware of what took place," (*id.*), but does not present specific evidence regarding each defendant's role in the alleged constitutional violation. Plaintiff's conclusory accusations are not sufficient to sustain a claim for supervisory liability. *See, e.g., Smith v. P.O. Canine Dog Chas,* No. 02 Civ. 6240, 2004 U.S. Dist. LEXIS 19623, at *33-36 (S.D.N.Y. Sept. 28, 2004) (holding that boilerplate allegations of supervisory liability, without allegations of personal involvement in the alleged violations, are insufficient to establish supervisory liability).

Defendants correctly note that in the aftermath of *Iqbal,* "courts in this Circuit have summarily dismissed supervisory liability claims similar to the claim plaintiff is pursuing in the instant matter." (ECF No. 67, Defs. Mem., at 15.) *See also Morpurgo v. Inc. Vill. Of Sag Harbor,* 07 Civ. 1149, 2010 U.S. Dist. LEXIS 21109, at *38-39 (E.D.N.Y. Feb. 17, 2010) ("*Iqbal's* 'active conduct' standard only imposes

liability on a supervisor through section 1983 if that
supervisor actively had a hand in the alleged constitutional
violation."); *Gordon v. City of New York,* 09-CV-3908, 2009
U.S. Dist. LEXIS 108179, at *6 (E.D.N.Y. Nov. 18, 2009)
(dismissing claims against Commissioner of the Department of
Corrections and the Warden of the correctional facility based
on plaintiff's failure to allege facts demonstrating that they
had "any direct involvement with, knowledge of, or
responsibility for the alleged deprivation of plaintiff's
civil rights").  Accordingly, even if the use of force against
plaintiff had been excessive, which it was not, the court
grants summary judgment as to plaintiff's excessive force
claims against Lieutenant Aylward, Lieutenant Colon, Sergeant
Brogan, Detective Palamara and Police Officer Simley based on
the lack of any evidence that they were personally involved in
the use of force.

On the other hand, plaintiff testified that Officer
Reilly, Officer McCauley, a female officer and another
"Hispanic" officer were present during the alleged
constitutional violation, although plaintiff specifically
testified that it was the male Hispanic officer who pushed him
into the window:

> A. I think Reilley was there. . . .
> Reilley was there and two *other* police.
> Q. Reilly and who?

> A. I don't know the names.  It might have
> been McCauley. . . .
> Q. Which officer pushed you into the
> window?
> A. The Spanish guy.
> Q. Only the Hispanic officer?
> A. Yes.
> (Pl. Dep. at 144.)

Defendants Reilly and McCauley argue that "it is clear from plaintiff's deposition that they did not participate in the alleged use of force against plaintiff," and moreover, "neither Police Officer McCauley nor Police Officer Reilly are of Hispanic origin."  (ECF No. 67, Def. Mem., at 13.)  The court does not rely on defendants' argument that neither Officer McCauley nor Officer Reilly is of Hispanic origin. Rather, based on plaintiff's testimony distinguishing the "Hispanic" officer from Officers McCauley and Reilly, and the defendants' submissions, the court finds that Officers Reilly and McCauley were not personally involved in a violation of plaintiff's rights, and that even if the alleged use of force used against plaintiff had been excessive, which it was not, Officers Reilly and McCauley are entitled to summary judgment because the undisputed record establishes that they did not use force about which the plaintiff complains.  Similarly, the court finds that Sergeant Harrison was not involved in a violation of plaintiff's rights because plaintiff testified that the "Hispanic" officer who pushed him was male, and

Sergeant Harrison is a woman.  (Pl. Dep. at 132 (referring to the Hispanic officer as "he").)

Furthermore, where an officer does not personally use excessive force, but witnesses the use of excessive force by other officers, he may be liable for failing to intercede to prevent the constitutional violation.  Liability attaches if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)).  Where the alleged force consists of a single push or a "rapid succession" of blows, courts have found that the officer did not have a realistic opportunity to intervene.  *See, e.g.*, *O'Neill,* 839 F.2d at 11-12.

Based on plaintiff's sworn testimony that it was the Hispanic officer who pushed him once into a window, the court finds that Officer Reilly, Officer McCauley, and Sergeant Harrison did not have a realistic opportunity to intervene in the alleged violation.  *See, e.g., Mowry v. Noone*, No. 02-CV-6257, 2004 U.S. Dist. LEXIS 28225, at *12 (W.D.N.Y. Sept. 30, 2004) (where alleged use of force was a "single kick to the

head," a reasonable jury could not conclude that defendant had a realistic opportunity to intervene). Accordingly, the court grants summary judgment as to plaintiff's excessive force claim against Officers Reilly and McCauley and Sergeant Harrison.

### iii. Qualified Immunity

Finally, defendants argue that they are entitled to qualified immunity on plaintiff's excessive force claims because they are "officials who act in ways they reasonably believe to be lawful." (ECF No. 67, Defs. Mem., at 16-17.) In response, plaintiff argues that "defendants are not entitled to qualified immunity . . . [because] reasonable officers would not have disagreed on the constitutionality of such conduct." (ECF No. 68, Pl. Mem., at 6.)

Pursuant to the doctrine of qualified immunity, "a government official performing discretionary functions is shielded from liability for civil damages if his conduct did not violate plaintiff's clearly established rights or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003). Prior to 2009, the United States Supreme Court had prescribed a formal two-step process for resolving qualified immunity claims: first, a court would decide whether the facts that

plaintiff presented made out a constitutional violation, and second, if the plaintiff satisfied the first step, the court would decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Saucier v. Katz,* 533 U.S. 194 (2001). In 2009, the Supreme Court revisited this two-step analysis and held that a federal court no longer has to adhere to a rigid order of analysis, but could continue to do so if deemed appropriate. *Pearson v. Callahan,* 555 U.S. 223 (2009). The Supreme Court's decision in *Pearson* did not alter the substantive law that, in order to deny qualified immunity, a court must find both that the defendant violated a constitutional right and that the law was clearly established. *V.S. v. Muhammad*, No. 07-CV-213, 2009 U.S. Dist. LEXIS 28150, at *7 n.3 (E.D.N.Y. Apr. 3, 2009).

Here, as discussed *supra,* plaintiff admits that he was "kick[ing]" as the officer tried to arrest him, (*see* Pl. Dep. at 146), and that the alleged force consisted of a single shove against a window, (*see id*. at 137) (referring to "the push"). Because, under these circumstances, plaintiff cannot establish that this alleged use of force constituted a Fourth Amendment violation, Office McCauley, Officer Reilly, Sergeant Harrison and the "other [Hispanic] officer" who allegedly pushed plaintiff are entitled to qualified immunity with respect to plaintiff's excessive force claim against him.

*See, e.g., Biggs v. City of New York*, No. 08 Civ. 8123, 2010 U.S. Dist. LEXIS 121332, at *28 (S.D.N.Y. Nov. 15, 2010) ("Because [defendant's] actions were objectively reasonable under the Fourth Amendment excessive force standard, it follows that Defendants are also entitled to summary judgment on qualified immunity grounds.") As such, the court need not reach the second step of the *Saucier/Pearson* analysis, whether the law was "clearly established." Accordingly, the court grants summary judgment as to plaintiff's excessive force claims against all defendants.

### d. Denial of Medical Attention Claims

Defendants next argue that summary judgment is appropriate on plaintiff's claim for denial of medical attention because "the bruise on plaintiff's arm and the cut on his thumb were not sufficiently serious to elevate his claim of denial of prompt medical attention to a constitutional violation," and because plaintiff "has failed to show that, subjectively, any police officer 'kn[ew] of and disregard[ed] an excessive risk to [his] health or safety.'" (ECF No. 67, Defs. Mem., at 11, 12.) Plaintiff does not directly address this argument in his opposition. (*See generally* ECF No. 68, Pl. Mem.) For the reasons discussed below, the court grants defendants' motion for summary judgment on plaintiff's denial of medical attention claim.

An Eighth Amendment claim against prison officials arising out of allegedly inadequate medical treatment requires proof of "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish deliberate indifference constituting "a constitutional violation under the Eighth Amendment, an inmate must meet both an objective and a subjective requirement." *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999).

Under the objective prong, the plaintiff must establish that an "official 'denied [the patient] treatment needed to remedy a serious medical condition. . . .'" *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996). Under this prong, "the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998)).

Under the subjective prong of the analysis, the plaintiff must prove that that the official denied treatment with a "sufficiently culpable state of mind." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). This requires that the prison official "'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must draw the inference.'" *Id.* at 66 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Under the subjective prong of the deliberate indifference standard, officials must "'intentionally deny[] or delay[] access to medical care or intentionally interfere with the treatment once prescribed.'" *Demata v. N.Y.S. Corr. Dept. of Health Servs.*, No. 99-0066, 1999 U.S. App. LEXIS 22955, at *5 (2d Cir. Sept. 17, 1999) (quoting *Estelle*, 429 U.S. at 104-05). The Second Circuit has reserved classifying delays in providing necessary medical care as "deliberately indifferent" for "cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days, or delayed major surgery for over two years." *Id.* at *5 (citations omitted).

Here, plaintiff claims that he was denied medical attention after sustaining a "gash" on his thumb and a "bruise" on his arm during the knife fight that preceded his arrest. (Pl. Dep. at 130-31.) Plaintiff also testified that he bruised his forehead and injured his shoulder and neck during the arrest, but he does not allege that he sought or was denied prompt medical treatment for those injuries. (*See generally id.*)

Accepting for the purposes of this motion plaintiff's account of his injuries, plaintiff has not presented evidence from which a reasonable juror could conclude that the defendants provided inadequate medical care. First, plaintiff fails to satisfy the objective prong of the analysis under *Griffin.* Plaintiff's injuries to his thumb and arm were not "serious medical conditions" of the type that "may produce death, degeneration, or extreme pain.'" *See, e.g., Rodriguez v. Mercado*, No. 00 Civ. 8588, 2002 U.S. Dist. LEXIS 16057, at *24 (S.D.N.Y. Aug. 28, 2002) (holding that plaintiff's "bruises to his head, back, and wrists" did not constitute a serious medical need); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) ("A bleeding finger does not pose a substantial risk of serious harm.").

Second, plaintiff fails to satisfy the subjective prong under *Griffin.* Defendants did not possess a "sufficiently culpable state of mind" nor ignore a "'life-threatening and fast-degenerating' condition for three days.'" *See, e.g., Espinal v. Coughlin*, No. 98 Civ. 2579, 2002 U.S. Dist. LEXIS 20, at *9 (S.D.N.Y. Jan. 2, 2002) (holding that a delay in treatment for a knee injury "was neither 'life threatening' nor 'fast-degenerating.'") Indeed, the photos taken of plaintiff's face and body at the police station show

no visible signs of injury.  (R. 56.1 Stmt. ¶ 4; ECF No. 66,

Ex. D.)  Moreover, during a pre-arraignment medical

examination on the same day of his arrest, plaintiff denied

any injury or illness.  (R. 56.1 Stmt. ¶ 5, ECF No. 66, Ex.

E.)  The record is devoid of any evidence of any life

threatening or fast degenerating medical condition of which

defendants could have been aware or could have ignored.  Thus,

construing the facts in the light most favorable to plaintiff,

the court finds that the defendants were not deliberately

indifferent to plaintiff's medical needs within the meaning of

the Eighth Amendment, and summary judgment on this claim is

granted.

### e. State Law Claims

Finally, defendants argue that to the extent

plaintiff's complaint can be liberally construed to allege

state law tort claims, they should be dismissed under New York

General Municipal Law ("GML") § 50-e.  (ECF No. 67, Defs.

Mem., at 17-18.)  The court agrees.

Under GML § 50-e, "notice of claim shall . . . be

served . . . within ninety days after the claim arises."  GML

§ 50-e(1)(a); *see Maier v. New York City Police Dep't*, No. 08-

CV-5104, 2009 U.S. Dist. LEXIS 78821, at *8 (E.D.N.Y. Sept. 1,

2009) ("Pursuant to New York General Municipal Law § 50-e, a

plaintiff who asserts a state law tort claim against a

municipal entity or its employees for acts that occurred within the scope of their employment must file a notice of claim within ninety days after the incident giving rise to the claim."). Failure to timely comply with the notice requirements of GML § 50-e requires dismissal of state law tort claims against a municipal entity and its employees. *Id.* at *12. As GML § 50-e provides, the 90-day period by which a notice of claim must be filed commences "after the claim arises . . . ." GML § 50-e(1)(a).

Here, plaintiff's claims arose on the date of his arrest, August 28, 2008. Plaintiff fails to allege that he filed a notice of claim within 90 days of his arrest, nor does he offer any documentation of such notice. Moreover, defendants have presented uncontroverted evidence that a § 50-e claim relating to this incident from the plaintiff was not found in the city's records. (ECF 66-4, Declaration of Diep Nguyen in Support of Defendants' Motion for Summary Judgment, at ¶ 20.) Thus, any potential state law tort claims arising out of this incident are dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in its entirety. Defendants shall serve a copy of this Memorandum and Order on plaintiff and

file a declaration of service by ECF no later than February 7,
2011.  The Clerk of Court is respectfully requested to enter
judgment in favor of defendants, to dismiss plaintiff's
complaint in its entirety, and to close the case.  Any notice
of appeal to the Second Circuit must be filed with the
district court within 30 days after the judgment is entered.
Fed. R. App. P. 4(a)(1)(B).


**SO ORDERED.**


Dated:      February 4, 2011
            Brooklyn, New York


                              _____/s/_____
                              KIYO A. MATSUMOTO
                              United States District Judge
                              Eastern District of New York